## Nes, Appellant, *v.* Ramsay.

*Will—Rule in Shelley's case—Life estate.*

Testator devised real estate to his son " for and during the term of his natural life in such manner that he shall not dispose of the same in his lifetime nor be in any manner liable for his debts, and, after his decease, I give and devise said tract of land to such person or persons, as he by his last will and testament shall direct, and in the event of his dying intestate, leaving issue him surviving, then to his issue in fee. In the event of his dying intestate, leaving no issue surviving him, then to my daughter." *Held,* that the intention of the testator was to devise the property over upon a definite and not an indefinite failure of issue, and that the son took a life estate only.

Testatrix devised real estate to her grandson "for his life and after his decease to his issue should he die leaving issue to survive him. In case he should die leaving no issue to survive him, then I direct my share and interest to be sold by my executor" ordering a distribution of the proceeds to other persons living at the date of the making of the will. *Held,* that the grandson took a life estate and not an estate in fee in the lands.

Argued May 18, 1893. Appeal, No. 28, July T., 1893, by plaintiff, Eliza Nes, from judgment of C. P. York Co., April T., 1893, No. 33, on case stated in favor of defendant, William F. Ramsey. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ.

Case stated to determine title to real estate.

The facts appear by the following opinion of the court below by BITTENGER, J.:

" Eliza Nes, the plaintiff in this case, claims to recover the purchase money for real estate, described in the case stated, sold by her to the defendant. A deed for the said real estate purporting to convey a title fee simple to said lands, was duly tendered to the defendant, and payment of the purchase money, according to the terms of the sale, was demanded.

" The defendant refused to accept the deed and pay the contract price, for the reason that the estate of the plaintiff in said real estate is not held by a title in fee simple. The case stated is agreed upon and submitted for the determination of the question of whether or not a fee is vested in the plaintiff for the lands therein described.

" The title of Eliza Nes, the plaintiff, is derived from her son, William J. Nes, he having by two deeds, dated respectively September 27, 1881, and March 20, 1883, duly delivered to her, copies of which are attached to the case stated, granted and conveyed to said Eliza Nes all his estate, right, title and interest in said premises.

" William J. Nes claimed a fee in said lands so conveyed by him to his mother, Eliza Nes, by virtue of the devises contained in the wills of his father, A. Hamilton Nes, deceased, and his grandmother, Catharine Nes, deceased. Copies of said last wills and testaments are attached to the case stated, and the material portion of the same are recited therein.

" The will of A. Hamilton Nes, probated in the office of the register of wills of York county, Pennsylvania, on the 18th day of June, A. D. 1879, so far as the same relates to this devise, is as follows :

" ' Item Second : When my said daughter shall attain the age of her majority, I give and devise to my son, William J. Nes, my tract of land, situate on the York and Gettysburg turnpike road, near York borough, adjoining lands of Henry Ebert and others, for and during the term of his natural life in such manner that he shall not dispose of the same in his lifetime, nor be in any manner liable for his debts, and, after his decease, I give and devise said tract of land to such person or persons, as he by his last will and testament, shall direct, and in the event of his dying intestate, leaving issue him surviving, then to his issue in fee. In the event of his dying intestate, leaving no issue surviving him, then to my said daughter, L. Kate, for life, and after her decease, to the person or persons she by her last will and testament shall direct, and in the event of her dying intestate, then to the persons who would take her real estate under the intestate laws of this commonwealth.'

" The will of Catharine Nes was probated in the office of the register of wills of York county, on the 14th day of December, A. D. 1880. The material portion thereof is as follows :

" ' Item First : I give and devise to my grandson, William J. Nes, my share and interest in the land situate in West Manchester township, York county, Pennsylvania, adjoining lands of Henry Ebert and others, for his life, and after his decease, to his issue, should he die leaving issue to survive him. In the

case he should die leaving no issue to survive him, I direct that my share and interest in said land be sold by my executor, hereinafter named, and the proceeds arising from the sale thereof to be divided into two equal shares, and the one thereof I give and bequeath to my nephew, Frederick A. Eichelberger, and one share thereof, I give and bequeath to the children of my deceased nephew, Edward C. Eichelberger.'

" A. Hamilton Nes and Catharine Nes died previous to the execution and delivery of said deeds of William J. Nes to his mother, hereinbefore mentioned.

" Said A. Hamilton Nes left to survive him his widow, the plaintiff, and two children, to wit: William J. Nes, who was of age at the time of the decease of his said father, and L. Kate Nes, then a minor, who attained her majority on the 16th day of October, A. D. 1881. Said William J. Nes is still living, unmarried and without issue; said L. Kate Nes being now intermarried with William C. Warner, and having issue living.

" The determination of this case involves the construction of the wills of A. Hamilton Nes and Catharine Nes, in part hereinbefore recited. They must be construed in the light, and upon the authority of the decisions of the Supreme Court in cases bearing upon the questions in issue. This necessitates a review of, and reference to said cases here, which will be done as briefly as possible.

" Cases cited by plaintiff: Eichelberger v. Barnitz, 9 W. 447: Title to real estate to be vested in testator's two sons, their heirs and assigns. If they should die without leaving lawful issue, then over. Decided to be a fee tail. Price v. Taylor, 28 Pa. 95: To granddaughter for life, provided she shall not leave issue at her death, and if she shall leave issue at her death, then in fee simple to her heirs forever; if she should not leave issue at her death then over. Held to be a fee tail in the first taker. Ogden's Appeal, 70 Pa. 501: To daughter for life with power to direct by will, and in default of a will to her lawful issue; and in default of such issue, then to her brothers and sisters. A fee tail. Haldeman v. Haldeman, 40 Pa. 29: Profit to be paid over to daughter for life; and at her death to descend and go to her child; if daughter dies leaving no issue; then to fall back to testator's estate. Estate tail. Hackney v. Tracy, 137 Pa. 53: To Elizabeth on

her making payments; if Elizabeth should die without issue then to descend to daughter Mary. Fee tail. Ray v. Alexander, 146 Pa. 242: To daughter in fee simple, provided however should she die without leaving lawful issue then to nephews and nieces. Estate tail. Cochran v. Cochran, 127 Pa. 487: To my son my farm; and if he should die leaving no lawful issue the whole to descend to his brothers and sisters. An estate tail. George v. Morgan, 16 Pa. 95: To son for his natural life; and after his death to the heirs of his body lawfully begotten; and in default of such issue to the heirs of testator's son Samuel. An estate tail. Morrison v. Truby, 145 Pa. 540: Real and personal property to son for life and after the death of either devisees should die without issue living at the time of his death to the other child; meant death in the lifetime of testator. Kay v. Scates, 37 Pa. 31: A limitation to one for life, with power of appointment in favor of the issue of his body; and in default of such appointment to such issue; and if he should die leaving no issue of his body, then over. A fee tail in the first taker. Kleppner v. Laverty, 70 Pa. 70: To daughter Mary Ann for life, at death to lawful issue should she leave any, in default of such lawful issue to testator's brothers. A fee tail. Paxson v. Lefferts, 3 Rawle 59. To a son for life, at his death to his issue in fee; and if no issue to another son. A fee in tail. Carroll v. Burns, 108 Pa. 386: To daughters during term of their natural lives and after their death to their lawful issue and their heirs and assigns. A fee tail.

"Cases cited by defendant: Taylor v. Taylor, 63 Pa. 481: To wife and daughter during life, if daughter depart this life with issue, then to descend to such lawful issue; in case daughter depart this life not leaving lawful issue, as aforesaid, then executors to sell and divide proceeds among nephews and nieces. A life estate. Nicholson v. Bettle, 57 Pa. 384: To R. L. & C. L. Nicholson in joint tenure during the residue of their natural lives; at their decease to pass to their heirs respectively; should either of them die without leaving lawful issue or heirs, said estate shall pass to the survivor and his heirs; and should both decease without leaving lawful surviving issue or heirs said estate may be sold and the proceeds divided among testator s surviving lawful heirs. An executory devise, and the

first taker unable to make a conveyance in fee. Middleswarth's Administrators v. Blackmore, 74 Pa. 414: To son Jonathan upon payments; and if he should die without leaving legitimate issue then real estate to be sold and the proceeds after payments provided for, distributed. A defeasable estate which terminated at his death. Robins v. Quinliven, 79 Pa. 333: To daughter for her natural life, after her death to her issue and their heirs for ever, in the proportions to which they would be entitled under the intestate laws of Pennsylvania. A life estate. Parkhurst v. Harrower, 142 Pa. 432: To Benjamine, during life, remainder to his issue if there be any at the time of his decease; but in default of issue of said Benjamine or of deceased child or children at the time of his decease, to vest in the heirs-at-law of the testator. A life estate. Smith v. Coyle, 83 Pa. 242: To B. for life and after his death to the lawful issue of his body begotten; who should be living at the time of his death, as tenants in common; and if B. should die without issue, then to J., his heirs and assigns. The fee was vested in the issue of B. who were living at the time of his death. Hill v. Hill, 74 Pa. 173: Limitation using the words issue or child; intention of the testator governs.

" The result of these decisions is, that where real estate is devised to one in fee, and afterwards devised over ' on default of issue ' of the first taker or equivalent words, or for life and upon the death of the life tenant ' without issue ' or ' in default of issue ' or ' without leaving issue ' an indefinite failure of issue is declared by the law to be intended. A fee tail is in such cases vested in the first taker, which, by virtue of the act of April 27, 1855, is converted into an estate fee.

" The word ' issue ' in a will means prima facie the same thing as ' heirs of the body ' and in general is to be construed as a word of limitation; but this construction will give way, if there be on the face of the instrument, sufficient to show that the words had a less extended meaning, and to be applied only to children or descendants of a particular class, or at a particular time. There is less reluctance indeed to narrow the prima facie meaning of the word ' issue ' than the words ' heirs of the body' because these latter words are proper technical words of limitation, while ' issue ' is not when used in a deed; and accordingly in a will it is to be construed as a word of purchase

or limitation as will best effectuate the intention of the testator, gathered from the entire instrument. It is a position not to be disputed that if it appears either by expression or by clear implication that by the word 'issue' the testator meant children or issue living at a particular period, as at the death of the first taker, and not the whole line of succession, which would be included under the term 'heirs of the body,' it must necessarily be construed as a word of purchase, and the rule in Shelley's Case can have no application. We quote from the opinion of the court in Taylor v. Taylor, 63 Pa. 481, the opinion being on pages 483, 484, and delivered by SHARSWOOD, J.

" The law is stated substantially in the same terms in the per curiam opinion in Parkhurst v. Harrower, 142 Pa. 432, on page 435.

" The will of A. Hamilton Nes, in words, devises the real estate therein described after the arrival of his daughter at her majority :

" 1. To his son William J. Nes for life, without power of disposition during his life, and not to be liable for his debts, and after his decease to such persons as he by his last will and testament shall direct.

" 2. Upon William J. Nes dying intestate, leaving issue him surviving, then to his issue in fee.

" 3. In the event of William J. Nes dying intestate leaving. no issue surviving him, then over to his sister, L. Kate Nes, for life, with power of appointment by will, and upon her death intestate, then to the persons who would take her real estate under the intestate laws of this commonwealth.

" It is apparent that the testator means, by the clear expressions used in his will, issue surviving William J. Nes, that is, (issue or children living at the time of his death) a definite and not indefinite failure of issue.

" The following are accepted definitions of the word survive : ' Survive : To live beyond ; particularly to live beyond another person.' Abbott's Law Dictionary, page 531. ' To live beyond another related person. To remain in life after the death of another.' Anderson's Dictionary of Law, page 999.

" There is a marked difference between a gift over on the first taker dying ' without leaving issue ' and a gift over on his dying ' without leaving lawful issue surviving.' The lat-

ter if it means anything must mean lawful issue living beyond
the death of the first taker. It is much more expressive than
the phrase 'leaving no issue behind him' which in Porter v.
Bradley, 3 Term R. was held to denote a definite failure of issue.
Porter v. Bradley has always been recognized as authority.
It was by Mr. Fearne, and has been to this day. Nicholson v.
Bettle, 57 Pa. 384. See opinion on pages 386, 387.

"The restriction against alienation by the first taker, William
J. Nes, and the provision against the estate being liable for his
debts ; and the gift over, in the event of William J. Nes leaving
no issue surviving him, to his sister, she being in life at the
time of the making of the will, are indicative of the intention
of the testator to refer to issue living at the death of William
J. Nes, and not issue indefinitely, and these circumstances, with
other matters apparent on the face of the will, show the inten-
tion of the testator to devise the property over upon a definite
and not an indefinite failure of issue of William J. Nes. This
position is sustained in the language of GREEN, J., in delivering
the opinion of the court in Hackney v. Tracy, 137 Pa. 53, on
page 59, as follows : 'It was contended for the appellant, that
such reasons ' (that the testator intended a definite failure of
issue) ' exists in the present case, in the fact that the limita-
tion is over to his sister Mary, by name ; and that she being a
living person, at the death of the testator, a definite failure of
issue must have been intended ; and that such limitation was
not too remote to sustain an executory devise. There are
cases in which such facts are held important, in connection
with other considerations, but standing alone it is clearly not
sufficient as has been held in many cases.' Besides, the case
of Porter v. Bradley, 3 Term R. 143, is stated to be authority
in this commonwealth as we have seen. The will in that case
is as follows : 'I give and devise unto my son Philip Dobin,
his heirs and assigns for ever, all that messuage and tenement
wherein I now live ; and my will is that in case my said son
Philip Dobin shall happen to die leaving no issue behind him
then the land so devised to Philip, as aforesaid I give and de-
vise the same for want of issue as aforesaid, unto my son James
Doman, his heirs and assigns for ever.'

"Lord Kenyon in delivering the opinion says, inter alia : 'If
the subsequent of this devise had been "and in case he shall

die without heirs then over" it would have given to Philip
Dobin an estate tail, which he might have barred by the recov-
ery. But here the words are "but in case he shall happen to
die leaving no issue behind him," which make a very material
difference and brings it within the case of Pells v. Brown, which
is the foundation, and as it were, the *magna charta* of this branch
of the law. . . . And there are even additional words in the
case "leaving no issue behind him" which necessarily import
that the testator meant at the time of his son's death. The
subsequent parts of the will also, convey the same idea; for
that the devisor mentions this event as likely to happen in the
lifetime of his widow, or of his younger son or daughters.'

Held to be a fee simple in Philip Dobin, and he having died
without issue at the time of his death the further disposition
was a good executory devise.

"This case is not only recognized as authority in Nicholson
v. Bettle, 57 Pa. 384; but in Kleppner v. Laverty, 70 Pa. 70,
on page 74, SHARSWOOD, J., uses this language:

"'After directing the interest of his personal estate to be paid
over to his daughter, Mary Ann, for her own use he provides
that upon her death the principal to be paid to any lawful issues
she may leave surviving her, and, in default of such issue, and
upon the happening of her death and not before, said principal
money to be divided equally between my aforesaid brothers
and sisters and their heirs. Had the words "surviving her"
been found in the disposition of his real estate it would have
been some indication of an intention that he meant "children"
or "issue then living."'

"In this last case it was decided that the real estate devised
was an estate in fee, because no contrary intention could be
gathered from the whole will. The inference is strong that, if
the words 'surviving her' had been used in the clause devising
the real estate, a different conclusion would have been reached
by the court.

"The will of Catharine Nes uses the same words as that of
A. Hamilton Nes, in substance, the language being 'for his life
and after his decease to his issue should he die leaving issue to
survive him. In case he should die leaving no issue to survive
him then I direct my share and interest to be sold by my exec-
utor,' ordering a distribution of the proceeds to other persons

living at the date of the making of said will.   This will differs
from the will of A. Hamilton Nes in that it has no limitations
against sale, liability for debts of the devisee, or power of ap-
pointment ; and also in the direction of sale of the land by the
testatrix's executor.

" For the reasons stated in our consideration of the will of
A. Hamilton Nes, we find that she meant by ' issue surviving
him ' issue or children living at the death of William J. Nes,
and a devise over at his death, in default of a definite, and not
indefinite failure of issue.   We think that the 'devise over to
persons living at the time of the making the devise and a direc-
tion to the executor to sell, in the event of no issue surviving
William J. Nes, evidently refers to a period in the lifetime of
the executor—to a definite and not indefinite time.   These are
mentioned as being evidence of the intent of the testator in
Taylor v. Taylor, supra, and the other earlier cases.   In the
later cases they are not regarded, by themselves, as important
factors in the construction of wills of the character of this, for
some reason we do not understand, but they may, as we have
seen, be properly considered with other circumstances, in ascer-
taining the intent of the testator.

Eichelberger v. Barnitz, 9 W. 447, the leading case cited for
the plaintiff, has saving exceptions.   Price v. Taylor, 28 Pa.
95, largely relied upon to sustain his construction, has been
shown to be too sweeping and erroneous.   While not directly
overruled, it has been qualified and questioned, and is not sus-
tained by subsequent decisions upon the questions at issue.
See Dodson v. Ball, 60 Pa. 492–500 ; Guthrie's Appeal, 37 Pa.
9 ; Yarnall's Appeal, 70 Pa. 335.

In Kay v. Scates, 37 Pa. 31 ; Carroll v. Burns, 108 Pa. 386 ;
Ray v. Alexander, 146 Pa. 242 ; and other kindred cases where
wills were under examination, they were construed as creating
estates tail, because nothing could be discovered in the respec-
tive wills to show that the intention of the testator was differ-
ent from the legal meaning attached to the words of limitation
' die without issue,' or equivalent expressions—nothing to show
a definite, instead of indefinite failure of issue intended.

" Carroll v. Burns was decided twice by the Supreme Court,
first, that the estate of the first taker was a life estate, and with-
in a year after, on reargument, a fee tail, converted into a fee

simple by the act of 1855, MERCUR, C. J., and GORDON and STERRETT, JJ., dissenting, because they thought 'the language of the testatrix so clearly shows she meant children, and not heirs generally, that the rule in Shelley's case does not apply.'

"The case at bar is ruled by Porter v. Bradley; Nicholson v. Bettle; Smith v. Coyle; Taylor v. Taylor; Middleswarth v. Blackmore, supra; Lightner v. Lightner, 87 Pa. 147; Robins v. Quinliven, 79 Pa. 335; Hill v. Hill, 74 Pa. 173; Ingersoll's Appeal, 86 Pa. 240, 246; and Parkhurst v. Harrower, 142 Pa. 432.

"For the reasons stated, we think the estate devised to William J. Nes was a life estate, only, and not a fee tail, converted into an estate in fee by the act of 1855; and that having conveyed his estate and interest to his mother, she has only his title under the said devises, stripped of the power of appointment by will, namely a life estate, and not in fee. Judgment must therefore be given for the defendant.

"And now, March 27th, 1893, judgment on the case stated for the defendant, with costs of suit."

*Error assigned*, was in entering judgment for defendant.

*N. M. Wanner*, *W. J. Nes* with him, for appellant.

*E. Chapin*, for appellee, not heard.

PER CURIAM, May 31, 1893:

The facts agreed upon, including the clauses of the respective wills of A. Hamilton Nes, and Catharine E. Nes, deeds of William J. Nes to Eliza Nes, etc., upon which the questions in dispute arose, are fully set forth in the case stated. An examination of the record has satisfied us that the questions thus presented for the decision of the court below were rightly disposed of, and hence there was no error in entering judgment on the case stated for the defendant.

For reasons given in the opinion of the learned judge of the common pleas the judgment should be affirmed.

Judgment affirmed.