# Fox's Estate.

*Will—Construction of—Trust and trustees—Survivor.*

Testator gave his estate to trustees in trust for his four daughters, the income to be paid one-fourth to each for life, and upon the death of any of the daughters leaving issue, the principal to be granted and assigned to such issue, "and in case of the death of any of my said daughters without lawful issue then upon the further trust that they the said . . . . trustees shall hold the share of such deceased daughter in trust for the use and benefit of her surviving sisters in the same and like manner as is hereinbefore expressed and declared of and concerning the respective share of her said surviving sisters." Two of the daughters died leaving children, and their shares were distributed to their children. A third daughter afterwards died leaving no issue. *Held,* that the share of the third daughter did not go to the surviving sister, but should be distributed one-third to the surviving sister, and the remaining two-thirds to the children of the deceased sisters per stirpes.

The words "survivor" or "surviving" will be understood as the

equivalent of "other," where in any other sense it would lead to an intestacy, or to inequality among those standing in the same degree of relationship to the testator, or to a distribution not in accordance with the general scheme of the will in its entirety.

In the above case it is not necessary to resort to the artificial and arbitrary construction that "survivors" meant survivors at the testator's death. The time in testator's mind was clearly the death of each daughter dying without issue, but he did not mean to make the shares of any group of his grandchildren dependent on the accident of their mother's survival of her childless sister. The word "other" very clearly expresses his general intent and that is the sense in which he used the word survivors.

Argued March 25, 1908. Appeals, Nos. 7 and 8, Jan. T., 1908, by Columbus W. Gabell, Jr., substituted trustee for Hannah L. Lindsey under the will of Charles Fox, deceased, and Catharine H. Chestnut, from decree of O. C. Phila. Co., April T., 1888, No. 107, dismissing exceptions to adjudication in Estate of Charles Fox, deceased. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Exceptions to adjudication.

From the record it appeared that Charles Fox, by his will probated May 28, 1853, directed as follows :

" Item.—I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal and mixed whatsoever and wheresoever and of which I may die seized or possessed unto my Father-in-law John Hagy and my friends Jacob R. Eckfeldt and George Gardom and unto the survivor or survivors of them and the heirs executors, administrators and assigns of such survivor To Have and To Hold the same unto the said John Hagy, Jacob R. Eckfeldt and George Gardom and unto the survivor or survivors of them and the heirs, executors, administrators and assigns of such survivor In Trust nevertheless to and for the following uses, intents and purposes that is to say, to collect and receive the rents, issues and profits thereof and apply so much of the same to the support, maintenance and education of my four daughters, viz. : Sally Ann Fox, Hannah L. Fox, Catharine H. Fox and Anna Margaretta Fox as may be necessary for that purpose and in the same manner as they are now supported and educated until my eldest daughter living shall arrive at and attain the

age of twenty one years then upon the further Trust to choose and appoint five disinterested persons to value, divide and apportion the said estate in equal parts or shares between my said Four daughters Sally Ann Fox, Hannah L. Fox, Catharine H. Fox and Anna Margaretta Fox and the issue of such of them as may be deceased leaving lawful issue such issue to be entitled to the share which his, her or their Mother would have been entitled to if living. If more than one as tenants in common and not as joint tenants.

" And upon the further Trust to hold the Estate so divided in Trust to pay over the whole of the income of the share of the said eldest daughter living into her own hands for her own proper use without being responsible for the debts or engagements of any husband she may have and to continue to apply so much of the income of the shares of my other daughters for their maintenance, support and education as may be necessary for that purpose in the same manner as they are now supported and educated until they respectively arrive at the age of Twenty one years from which time the whole of the income of their respective shares accruing thereafter shall be paid to them into their own proper hands for their own proper use without being responsible for the debts or engagements of any husband or husbands they or any of them may have and in case of the decease of any of my said daughters leaving lawful issue then upon the further Trust that they the said John Hagy, Jacob R. Eckfeldt and George Gardom Trustees as aforesaid or the survivors or survivor of them and the heirs, executors, administrators and assigns of such survivor shall grant, convey and assure the said share of such deceased daughter and the absolute estate inheritance and fee simple thereof unto the lawful child or children and unto the lawful issue of such of them as may be deceased leaving lawful issue their heirs and assigns forever to be equally divided between them if more than one share and share alike as tenants in common and not as joint tenants and if but one such child then to the use, benefit and behoof of such child his or her heirs and assigns forever and in case of the death of any of my said daughters without leaving lawful issue then upon the further Trust that they the said John Hagy, Jacob R. Eckfeldt and George Gardom Trustees as aforesaid or the sur-

vivors or survivor of them and the heirs, executors, administrators and assigns of such survivor shall hold the share of such deceased daughter in trust, for the use and benefit of her surviving sisters in the same and like manner as is hereinbefore expressed and declared of and concerning the respective share of her said surviving sisters and upon the further Trust that it shall and may be lawful and I do hereby authorize and empower the said John Hagy, Jacob R. Eckfelt and George Gardom Trustees as aforesaid and the survivors and survivor of them and the heirs, executors and administrators of such survivor to let on Ground Rent or to sell and dispose of at any time after my decease all or any part of my real estate either at public or private sale for the best price or prices that can be had for the same and to make, execute, sign, seal, acknowledge and deliver good and sufficient deed or deeds of conveyance or assurance in the law so as to vest the same and the title thereof in the purchaser or purchasers thereof in fee simple or otherwise."

Two of the daughters died, each leaving issue her surviving, to which issue, in the case of each daughter, the principal of her original share was duly conveyed.

The daughter Hannah, who became the wife of one Andrew Lindsey, died on February 18, 1903, without issue. The only surviving sister was Catharine H. Chestnut, a widow.

The share of Hannah was claimed by the trustee of Catharine. It was also claimed by Catharine herself.

The court directed the same to be divided into three parts and ordered the same to be paid, one-third to the trustee for Catharine; one-third to each descendant of each of the daughters who had first died.

Exceptions filed by the trustee of Catharine and by Catharine herself, were dismissed.

*Errors assigned* were in dismissing exceptions to adjudication.

*John G. Johnson*, with him *Frederick L. Breitinger*, for appellants, cited: Woelpper's App., 126 Pa. 562.

*Daniel A. Stewart*, for appellee, cited: Johnson v. Morton,

10 Pa. 245; Ross v. Drake, 37 Pa. 373; Bacon's Est., 202 Pa. 535; Vance's Est., 209 Pa. 561; Vogdes's Est., 16 Pa. Dist. Rep. 377.

OPINION BY MR. CHIEF JUSTICE MITCHELL, June 23, 1908:

The general intent apparent throughout the scheme of the will was to make equality among his daughters during their lives with remainder to the children of those leaving issue. In pursuance of this intent the estate was to be held as a unit until the oldest daughter should come of age and then severed as to her, and so on to each daughter in turn until the youngest reached full age when there would be four separate trusts, one for each daughter in severalty. If one of the daughters had died without issue before any severance there can be no doubt that the others would have taken her share as survivors by the express terms of the will. If such daughter died after her share had come to be held separately the direction of the will is the same and the others would have taken as survivors. But if the daughter first dying left issue her share would be distributed to them and it is argued that then they would have received their full share, their claims under the will would have ended and they would be excluded from participation in the share of another daughter subsequently dying without issue. As was forcibly said by Judge PENROSE: "If the word 'surviving,' as used by the testator, is to be understood in its precise, literal sense, it necessarily follows that while he made careful provision for his grandchildren, giving to them the 'inheritance and fee simple' of the shares originally held in trust for their mother, whose interest was expressly confined to the term of her life, he intended that only the children of a daughter who survived a sister who left no issue should share in the distribution of the part held in trust for her, and to exclude all others; and it also follows that he must have intended if the last survivor of his daughters should die without issue, even though all his other daughters had left children still surviving, there would be an intestacy."

But this result is clearly not in harmony with the general intent and scheme of the testator. He treated all his daughters alike, gave each one-fourth of his estate for life with remainder to her issue. Not one of them was vested with power to

break the succession of her issue in remainder and nowhere is there any indication that he intended to make any distinction among his descendants of the second generation as to their ultimate share in his estate.    That the issue of a sister dying first should thus be cut off from participation in the share of a sister dying subsequently without issue, would be giving an accidental and irrelevant fact an effect contrary to the manifest general intent and an exercise of the power withheld from the daughters themselves.    As said by the auditing judge below : " It is well settled, however, that the word survivor or surviving, will be understood as the equivalent of 'other,' where in any other sense it would lead to an intestacy or to inequality among those standing in the same degree of relationship to the testator, or to a distribution not in accordance with the general scheme of the will in its entirety : Lapsley v. Lapsley, 9 Pa. 130 ; Williams on Executors, 1577; Theobald on Wills, 355.   See also Vance's Estate, 11 Pa. Dist. Rep. 197 ; s. c., 209 Pa. 561 ; Park's Estate, 21 W. N. C. 227; Hubbert's Estate, 6 Pa. Dist. Rep. 96 ; Vogdes's Estate, 16 Pa. Dist. Rep. 377 ; Lewis' Appeal, 18 Pa. 318, etc."

It is not necessary to resort to the artificial and arbitrary construction that " survivors " meant survivors at the testator's death. The time in testator's mind was clearly the death of each daughter dying without issue, but he did not mean to make shares of any group of his grandchildren dependent on the accident of their mother's survival of her childless sister. The word " other " very clearly expresses his general intent and that is the sense in which he used the word " survivors."

Decree affirmed.