Loving Estate.

Argued April 23, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Benjamin H. Levintow,* for appellant.

*John J. Mitchell, Jr.,* with him *Maurice J. Friedman,* for appellees.

OPINION BY BALDRIGE, P. J., July 19, 1946:

Whether a remainder created in a will is vested or contingent is the question before us.

The testator died September 21, 1916. After giving to his wife the income of his estate for life, he provided: ". . . and the income from the balance of my estate immediately after the decease of my wife I give in equal shares to my grandchildren Catherine Loving and William T. Loving for and during the term of their natural life and to the survivor of them during his or her natural life, they paying the taxes and water rents and necessary repairs to keep my property in good rentable condition. And immediately after the death of the last or survivor of my grandchildren I direct the principal of my estate be equally divided between my sister Margaret Johnson and my niece Anne E. Nickless or the survivor of them."

It will be observed that the first objects of testator's bounty, after providing for his wife, were his two grandchildren, and after the death of the survivor, his estate was to be divided between his sister and his niece or the survivor of them. No mention is made of any issue. The surviving life tenant, William T. Loving, a grandchild, died January 9, 1945. Testator's sister and her

daughter, named as remaindermen, outlived the testator but predeceased his two grandchildren.

If the remainder to the sister and niece is vested, the fund for distribution will pass through them to testator's grandnephews and grandnieces, great grandnephews and great grandnieces, subject to the interest of spouses in that branch of the family. If, on the other hand, the remainder is held contingent this fund will pass to his direct descendants under the intestate laws.

In an adjudication of the account Judge HUNTER held the remainder to the sister and niece is contingent. Exceptions filed by the grandnephews and grandnieces to this adjudication were sustained. The court in banc, Judges HUNTER and LADNER dissenting, held the remainder vested.

The word survivor or surviving, following a prior gift, is presumed to refer to the time of the death of the testator unless a contrary intention is apparent: *Handy's Estate,* 314 Pa. 61, 170 A. 277. The reason for this rule is that generally it distributes testator's property among his descendants "rather than to shunt it off into one line where it may pass out of the family." *Nass's Estate,* 320 Pa. 380, 383, 182 A. 401. Its very purpose would be defeated in this case if the appellees' contention should prevail. Appellees advance the argument that the law favors generally vested, over contingent, remainders, but that rule, as the survivor rule, carries far greater force when the interests of a direct descendant are involved against those of a collateral or remote relative: *Weir's Estate,* 307 Pa. 461, 469, 161 A. 730; *Groninger's Estate,* 268 Pa. 184, 189, 110 A. 465; *Laughlin's Estate,* 336 Pa. 529, 9 A. 2d 383; *Hoffman's Estate,* 147 Pa. Superior Ct. 124, 24 A. 2d 35.

The testator does not make a direct, or express, gift of the remainder to his sister and niece, as he did to his grandchildren, but directs his estate shall be "equally divided" between them. The gift to the sister and niece comes within the category of the divide and pay cases.

This rule has been criticized in other jurisdictions and is disapproved by the American Law Institute in Restatement, Property, §260. We do not hold it controlling in the instant case, but it is still given consideration in Pennsylvania: *Hoffman's Estate,* supra, 125; *Rickenback Estate,* 348 Pa. 121, 34 A. 2d 527. Its application would warrant the conclusion that the interests of the sister and niece are contingent. In *Rickenback Estate,* supra, pp. 125, 126, Mr. Justice ALLEN STEARNE stated: "We have repeatedly decided that where there is a direction to pay and divide, but there is no separate and antecedent gift which is independent of the direction and time for payment, the legacy is *contingent.* The reason for the rule is that the gift itself is only *implied from a direction to pay.* Such a gift is necessarily inseparable from the direction, and hence must partake of its quality. If the direction is future and contingent so must the gift be."

It is true, as appellee contends, that there is a presumption against intestacy, but it is no stronger than the presumption against an intention to disinherit natural heirs. Where two presumptions conflict the will should be interpreted without regard to either: *French's Estate,* 292 Pa. 37, 41, 140 A. 549. There is another rule that "where the meaning of a devise is uncertain the law will adhere as closely as possible to the general rules of inheritance, . . ." *Grim's Appeal,* 89 Pa. 333, 334; *Conner's Estate,* No. 2, 318 Pa. 150, 158, 178 A. 15.

We have mentioned these various artificial rules for construing wills, but we recognize that they, as well as precedents, are but an aid in the interpretation of wills. They are entirely disregarded if in conflict with the apparent meaning of the language used, which in the final analysis is the controlling factor: *Selser's Estate,* 135 Pa. Superior Ct. 480, 5 A. 2d 632; *Fox Estate,* 222 Pa. 108, 70 A. 954.

Former Chief Justice MITCHELL in *Mulliken v. Earnshaw,* 209 Pa. 226, 58 A. 286, in discussing the period to

which "then living", or similar words in a will, should be applied, stated: "Like all artificial rules it had the constant tendency to become an arbitrary fetter instead of a mere instrument for the ascertainment of the testator's intent. The policy of the later cases in this state, if not everywhere, is to get back to the true rule of looking only to the actual intent. There is no sound reason in the nature of things why the actual meaning of the person using the words should not be sought in the case of a will exactly as it is in the case of a contract."

Judge HUNTER in his adjudication, after calling attention to testator's use of the word "survivor" three distinct times, aptly states: "These references to a 'survivor' in my opinion remove all ambiguity as to the meaning of the word, and when he repeats it in his gift to the remaindermen 'or survivor of· them' he must mean the survivor at the termination of the trust. I cannot believe in such repeated use of this word that he intended two periods of survivorship. Consistently he ·must have meant to give only to living persons and not to the estates of the dead. He intended to refer survivorship to the time of distribution of both principal and income."

The appellees emphasize the testator's failure to make express provisions for his lineals beyond his grandchildren and in lieu thereof provided for his sister and niece. That omission gave us some concern. Nevertheless, from a careful study of this entire will, we think that the testator's intent was to provide for a disposition of his estate if the grandchildren died in childhood, while his sister and niece were living. That contingency upon which the remainder depends did not occur, the remainder never vested in the sister and niece and as a result their issue are not entitled to inherit: *Sternbergh's Estate*, 250 Pa. 167, 171, 95 A. 404.

Affirmance of this case would mean that this estate would pass out of the testator's blood and the grand-

344

children would get nothing.  We are convinced that such a construction of this will was not in the mind of the testator.

The decree of the court below is reversed at appellees' costs and a distribution is ordered in accord with the adjudication of Judge HUNTER.

DITHRICH, J., dissents.